UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE LENIART,           :
     Plaintiff,         :
                       :
v.                      :     3:20cv1098 (KAD)
                       :
YVONNE BORCHET, RICHARD  :
BENOIT, BRUCE LICHTENSTEIN,  :
DR. FISHER, ROLAND COOK,   :
     Defendants.        :

## INITIAL REVIEW ORDER

The plaintiff, George Leniart ("Leniart"), a sentenced prisoner currently housed at

Cheshire Correctional Institution ("Cheshire"), brings this civil rights action *pro se* and *in forma*

*pauperis* pursuant to 42 U.S.C. § 1983, alleging that former DOC Commissioner Cook, Dental

Director Benoit, Dental Associate Borchet, and Drs. Lichtenstein and Fisher violated his Eighth

Amendment right to be free from cruel and unusual punishment. His claims arise out of his

dental treatment while at Cheshire.[1] He seeks damages, a declaratory judgment, and injunctive

relief.[2] Leniart sues Commissioner Cook in his individual and official capacities. All other

defendants are sued in their individual capacities. Leniart has also filed a motion for preliminary

injunction. ECF No. 4.

---

[1] Leniart also brings various state law claims. However, the court does not herein address the plausibility of such claims under Connecticut law because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims. The state law claims may be addressed at a subsequent stage of the proceedings by the defendants by way of a motion to dismiss or a motion for summary judgment.
[2] These claims were previously severed from a prior action alleging Eighth Amendment deliberate indifference to his medical needs. *See* Dkt. No. 3:20cv392, ECF No. 8.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATIONS**

In 2012, Leniart informed the Cheshire dental unit that his partial denture ("partial") had broken and needed to be replaced as it was causing gum inflammation. ECF No. 1 at ¶ 13.

In February 2013, Leniart saw a dentist who noted his gum tissue was inflamed and that he need a new partial. *Id.* at ¶ 14.

At the end of November 2014, Leniart still had not had his partial fixed, despite having filed requests concerning his broken partial. *Id.* at ¶¶ 15-16. Leniart was experiencing extreme pain and bleeding gums and the broken partial made it difficult to eat. *Id.* at ¶ 16.

Leniart continued to file requests and remedies about his dental needs; and in 2015, he filed a state habeas case regarding his need for repair or replacement of his broken partial that was causing him dental problems. *Id.* at ¶ 17.

In 2016, a partial was fabricated (over Dental Assistant Borchet's objection) by Dr. Lichtenstein as a result of pretrial negotiations. *Id.* at ¶ 18. However, the polymer caused Leniart's gums to become inflamed and bleed. *Id.* at ¶ 19. As a result of a pretrial negotiations (presumably in connection with his habeas case), DOC medical officials, including Dr. Benoit, agreed to send Leniart to an expert for a comprehensive exam and to test for allergies to the polymer. *Id.*

On September 16, 2016, according to the dental expert's examination, Leniart's dental problems included general edema, erythema, loss of attachment in the gum, mobile teeth, plaque, and calcium deposits due to the lack of proper dental exams. *Id.* at ¶ 20. The expert formulated a plan for dental care that was to be executed in two phases: phase one for therapy including deep cleaning and extractions; phase two for surgical procedures depending on the outcome of phase one. *Id.* at ¶ 21. The expert explained that Leniart would incur bone loss and would lose of his teeth without this dental work. *Id.*

In September 2016, Leniart was seen by the expert at UCONN and had dental care for his upper right side. *Id.* at ¶ 22. As the work was extremely painful, it had been agreed that anesthesia would be used and allergy testing performed. *Id.* However, no anesthesia was provided and no allergy testing was performed. *Id.*

On his second visit to UCONN in October 2016, Leniart was told that all further treatment was on hold. *Id.* at ¶ 23. In November 2016, after Leniart wrote to the dental unit about the hold on his dental treatment, Dr. Lichtenstein called him to inform him that Dr. Benoit had denied his request for dental treatment at UCONN. *Id.* at ¶ 24. After Leniart filed a dental remedy complaining about the denial of treatment at UCONN, Dr. Lichtenstein wrote to him explaining that Dr. Benoit would address all care in the future. *Id.* at ¶ 25.

By the end of January 2017, Leniart had not received the dental work that the expert had identified as urgent. *Id.* at ¶ 26. Leniart's gums became puffy and sore and were bleeding. *Id.* Dr. Lichtenstein informed Leniart that he could not perform the work required, but he agreed to email Dr. Benoit. *Id.*

Later while Leniart was in the medical unit, Borchet stated that he "needed to stop writing grievances and something may get done." *Id.* at ¶ 27. Nevertheless, Leniart continued a "campaign of requests throughout 2017," and he filed grievance and appeals. *Id.* at ¶ 28. Most of his filings did not receive a response and the substantial delays caused irreparable damage. *Id.*

At a pretrial conference in April 2017 (again, presumably in connection with his habeas case), it was agreed that a metallic partial would be provided to alleviate the problems Leniart was having with his plastic partial. *Id.* at ¶ 29. As of August 3, 2020, this metallic partial had not yet been completed. *Id.*

On May 2, 2017, Leniart was seen by Dr. Lichtenstein, who informed him that a metallic partial was approved and Dr. Benoit would come to finish the work that had commenced in mid-2016. *Id.* at ¶ 30.

In November 2017, Leniart wrote to the dental unit to inquire why the work that had begun in early 2016 had not been completed. *Id.* at ¶ 31. Leniart indicated that he was suffering from pain, stress, anxiety and anger as a result of his dental work being on hold for more than a year. *Id.*

Leniart was later called into the dental unit and provided with a bottle of Paroex. *Id.* at ¶ 31. Dr. Lichtenstein apologized and stated, "See ya next year."

On February 22, 2018, Leniart wrote to the dental unit, claiming his mouth was a mess and that he had not been seen since 2016, that his gums were bleeding, and that his teeth needed to be fixed as he had been experiencing pain and discomfort for more than a year. *Id.* at ¶ 32. He also submitted a dental request seeking the urgent care for his gums that had not been completed in 2016. *Id.* at ¶ 33.

Leniart was later called into the dental unit, where he was told that Dr. Lichtenstein had reached out to Dr. Benoit and been informed that Leniart's dental care would be handled soon. *Id.*

On May 20, 2018, after another two months, Leniart contacted the dental unit and explained that he could not chew without serious pain; he requested to be sent out to a provider. *Id.* at ¶ 34. Borchet responded that his request had been entered. *Id.* However, Leniart was not seen. *Id.* at ¶ 34.

By mid-2018, Leniart continued his attempt to obtain the treatment for his unaddressed dental needs. *Id.* at ¶ 35. He was also suffering from other medical ailments, which exacerbated his dental issues. *Id.* He was informed by Dr. Lichtenstein that he would be called during the first week of December. *Id.*

On December 27, 2018, Leniart submitted a request letting Borchet know that she had never scheduled him for the beginning of December. *Id.* at ¶ 36. She responded that his request for filling a cavity that was causing him extreme pain had been entered into the computer. *Id.*

On February 10, 2019, Leniart submitted another medical request to inform the dental unit that he had been in extreme pain since November 2018; Borchet responded that he was on the list. *Id.* at ¶ 37.

On April 9, 2019, Leniart submitted another request to the dental unit because his grievance and appeal had not been answered. *Id.* at ¶ 38. He stated that he had not received treatment for the cavity known to Borchet to be causing him extreme pain since November 2018. *Id.*

On April 22, 2019, Leniart was called to the dental unit, at which time Dr. Lichtenstein observed that Leniart had another very painful tooth; Dr. Lichtenstein told Borchet to schedule Leniart in a few weeks because his tooth was bad. *Id.* However, Leniart was not called. *Id.*

On July 22, 2019, Leniart wrote another request to the dental unit about the loose filing in the tooth that was filled on April 19, 2019,[3] and another painful back tooth on his right side. *Id.*

---

[3] Leniart is likely actually referring to his appointment with Dr. Lichtenstein on April 22, 2019 because he has alleged that he had not been seen since November 2018 prior to that appointment. *See id.* at 38.

at ¶ 39. Borchet replied that Leniart was entered in the computer; however, Leniart was not seen, called for observation, or provided with pain medication. *Id.*

On September 8, 2019, Leniart was still waiting to be seen and suffering pain. *Id.* at ¶ 40. He ran into Dr. Lichtenstein, who indicated that he would call him the next day and instructed Borchet to schedule Leniart as soon as possible to have the back tooth taken care of. *Id.*

After not being called, Leniart wrote to the dental unit on September 15 and September 25, 2019; Borchet responded by indicating that Dr. Lichtenstein had spoken to him. *Id.* at ¶ 41. Leniart continued to suffer in pain. *Id.*

On September 25, 2019, Leniart wrote a Health Services Review to Commissioner Cook accompanied by a letter stating that he was in pain and that inmates were not being provided with timely treatment. *Id.* at ¶ 42. He indicated that Cheshire needed more dentists and that Borchet was the main problem in the dental unit. *Id.* He received no response to this Health Services Review or letter. *Id.* at ¶ 42.

On January 10, 2020, Leniart was called to the dental unit by Borchet. *Id.* at ¶ 43. A new dentist, Dr. Fisher examined his mouth and informed him that several teeth needed extracting. *Id.* Leniart informed Dr. Fisher that Dr. Lichtenstein was going to fill a couple of his cavities and that extraction was not possible. *Id.* Borchet then asked Leniart to sign the refusal papers and informed him that he would be charged for the visit. *Id.* Leniart left the office without signing the papers. *Id.* He later learned that every inmate who saw Dr. Fisher (who replaced Dr. Lichtenstein) had received the same recommendation to have their teeth extracted. *Id.* Leniart brought this to the attention of the habeas court with no results. *Id.* Leniart later learned that Dr. Lichtenstein left due to Borchet. *Id.*

In February 2020, Leniart wrote an Inmate Request seeking informal resolution of his need for treatment for his dental issues and a dental remedy form regarding the denial and delays of his dental treatment and his request to be sent to Yale dental clinic for a complete evaluation. *Id.* at ¶¶ 44-45.

On March 9, 2020, Leniart was called to the dental unit by the dental hygienist and had x-rays taken. *Id.* at ¶ 46. At that time, the hygienist observed that Leniart had an infection in his lower right wisdom tooth; several cavities that could be fixed; and a few loose teeth. The hygienist also noted that the metallic partial had never been completed. *Id.*

That same day, Leniart wrote to the dental unit about his extreme pain and the infection noted by the hygienist. *Id.* at ¶ 47. Dr. Fisher responded by indicating that Leniart was on the list but there was a twelve-week wait time for treatment. *Id.*

On June 2020, Leniart's Health Services Review was returned with a disposition dated on January 28, 2020, and signature dated March 3, 2020. *Id.* at ¶ 48. Due to the lengthy delay and inconsistent dates, Leniart filed an appeal, although the Health Services Review indicated he had exhausted his administrative remedies. *Id.* at ¶ 48.

On April 7, 2020, Leniart wrote to the medical sick call because the dental unit would not respond to any of his requests since he had to wait twelve weeks to be seen for a dental infection. *Id.* at ¶ 49. On April 14, 2020, Leniart was seen by an APRN in the medical unit who provided him with Amoxicilin and stated she would inform the dental unit about his severe tooth infection that had oozing puss. *Id.* at ¶ 50.

On April 17, 2020, Leniart's severely infected tooth was extracted. *Id.* at ¶ 50. This was the same tooth that the hygienist had identified on March 9, 2020, and that Dr. Lichtenstein had noted several months prior. *Id.*

On July 16, 2020, Leniart filed a Health Services Review to the dental unit concerning his attempt to receive dental care. *Id.* at ¶ 52. He received no response. *Id.*

On July 28, 2020, Leniart could no longer bear the pain and was called to the medical unit prompt care. *Id.* at ¶ 53. A nurse provided him with Ibuprofen; she informed him that inmates do not get called to medical prompt care for dental issues and that he had to write to the dental unit. *Id.* at ¶ 53. Leniart explained that he had tried several times with no success. *Id.*

Later that day, Leniart was seen at the dental unit and an infection in his upper right tooth was identified. *Id.* He received Amoxicillin and told he would be called back for extraction. *Id.*

Leniart alleges that the failure to treat his minor cavities and the delays between treatment has caused him irreversible damage, including losing his teeth, and experiencing pain and discomfort. *Id.* at ¶ 54. He also asserts that the hold on his dental treatment resulted in his suffering severe inflammation under his upper partial, extensive bone loss, and extremely mobile teeth. *Id.* at ¶ 46.

## DISCUSSION

Leniart asserts Eight Amendmentth deliberate indifference claims against Borchet, Dr. Benoit, Dr. Lictenstein, Dr. Fisher and Commissioner Cook for failing to provide timely adequate dental care, failure to prevent damage to his teeth and gums, and failure to treat his allergic reactions caused by polymers by failing to provide him with the metallic partial.[4] He

---

[4] The Court construes this claim as based on the failure to provide the metallic partial after Leniart exhibited an allergic reaction to the polymer in the plastic partial.

also alleges claims based on the inadequate dental staffing at Cheshire, failure to provide alternative procedures to transport inmates to an outside provider when overbooked or shut down due to COVID-19, and failure to provide an adequate Health Services Review process.

**Eighth Amendment Claims**

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467

F.3d 263, 280–81 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703.

When an inmate brings an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*

For purposes of this initial review only, the court assumes that Leniart has established a sufficiently serious need for dental treatment based on his pain and the deterioration of his overall oral health caused by the alleged delay in and/or denial of treatment. The Court next looks to whether deliberate indifference is plausibly alleged against each named defendant.

**Borchet**

Leniart complains that Dental Assistant Borchet acted in violation of Eighth Amendment by impeding his ability to receive immediate dental treatment. He alleges that she was inadequate in performing her job duties, which allegedly included scheduling, calling inmates to dental, assisting the dentist, responding to inmate remedies, and coordinating the dental remedies process. Leniart claims that Borchet failed to schedule him for treatment even though she knew

of his painful dental conditions. His allegations include that she failed to provide him with an appointment in accordance with Dr. Lichtenstein's instructions that she do so as soon as possible, on two separate occasions. *See* ECF No. 1 at ¶¶ 38-41.

Leniart's allegations raise a plausible inference that Borchet's conduct constituted more than negligence. *See Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to at most negligence). Accordingly, for purposes of initial review, Leniart's allegations plausibly allege that Borchet acted with deliberate indifference to a substantial risk of harm to Leniart through her alleged actions and inactions.

**Dr. Lichtenstein**

Leniart alleges that Dr. Lichtenstein informed him that his treatment with the expert had been denied by Dr. Benoit and that he was not qualified to perform that work but would contact Dr. Benoit about it; that Dr. Lichtenstein informed him about the approval of the metallic partial and that Dr. Benoit would soon complete the work commenced at UCONN; that Dr. Lichtenstein promised to see Leniart in early December 2018 but Leniart was not seen until April 22, 2019; and that Dr. Lichtenstein failed to provide Leniart any treatment for a tooth observed to need treatment on April 22, 2019, despite Leniart's many requests for dental care.

Leniart plausibly alleges that Dr. Lichtenstein was deliberately indifferent to a substantial risk that Leniart would suffer pain and further significant damage to his dental health when he failed to timely treat Leniart. Accordingly, the Eighth Amendment claim against Dr. Lichtenstein for failure to provide him dental care for his painful dental conditions may proceed.

12

Leniart's allegations also include that Dr. Lichtenstein was aware that Dr. Benoit had not provided Leniart with the treatment commenced by the expert at UCONN and that Dr. Lichtenstein was communicating with Dr. Benoit about Dr. Benoit completing that dental treatment. Although Dr. Lichtenstein's involvement with this treatment is not entirely clear at this stage, Leniart's allegations indicate that Dr. Lichtenstein was conscious of the fact that Dr. Benoit had not provided Leniart with the treatment assessed by the expert as necessary to prevent bone and tooth loss. Construed most broadly, Leniart's allegations suggest that Dr. Lichtenstein acted with deliberate indifference by failing to ensure Leniart received the treatment that he indicated would be performed by Dr. Benoit. Thus, the Court will permit this Eighth Amendment claim to proceed for further development.

Leniart's allegations fail, however, to establish that Dr. Lichtenstein acted with deliberate indifference with respect to the failure to procure a metallic partial.   The allegations do not demonstrate that Dr. Lichtenstein had any roll in that aspect of Leniart's treatment plan and therefore any intended Eighth Amendment claim against Dr. Lichtenstein arising out of the failure to provide the metallic partial is dismissed without prejudice.

**Dr. Fisher**

Leniart alleges Dr. Fisher indicated that he would only provide tooth extraction as dental treatment for Leniart's teeth, and that Dr. Fisher responded to his request for dental care due to his extreme pain and infection by stating that Leniart was on a list with a twelve-week wait for dental care.

It is well established that "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner

13

might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors."). A medical provider may however act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143 F.3d at 703–04; *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

At this nascent stage, Leniart's allegations are sufficient to raise an inference that Dr. Fisher's assessment that Leniart's teeth should be extracted was not based on sound medical judgment. Leniart's allegations indicate that Dr. Lichtenstein had allegedly intended to fill his cavities, and a hygienist later assessed that several cavities could be fixed. Leniart's allegations also raise an inference that Dr. Fisher failed to act according to sound medical judgment by delaying Leniart's dental care for his serious dental condition and pain for twelve-weeks. *See Warwick*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *4 ("Dr. Lichtenstein's explanations for the delay in Warwick's dental surgery suggest that non-medical reasons, such as short-staffing, were the cause and … Dr. Lichtenstein was content, without further inquiry, to allow Warwick to remain untreated for a serious medical condition for several months.").

Accordingly, the Court will permit Leniart's claims to proceed against Dr. Fisher for further development.

**Dr. Benoit**

Leniart alleges that Dr. Benoit was the Dental Director for the Department of Correction ("DOC") and was one of the DOC officials involved in the decisions regarding his treatment in response to his habeas action. Construed liberally, the complaint indicates that Dr. Benoit terminated the treatment at UCONN and thereafter was responsible for completing the treatment commenced at UCONN and identified by the expert as necessary to prevent Leniart from incurring bone and tooth loss. Leniart has sufficiently alleged that Dr. Benoit acted with deliberate indifference first by discontinuing Leniart's treatment at UCONN and thereafter by failing to provide him with that treatment.

Leniart's complaint also suggests that Dr. Benoit failed to provide the metallic partial that had been agreed upon during a pretrial conference presumably in connection with his habeas case. Again, construed liberally and drawing all inferences in favor of the claim, the court finds that the Eighth Amendment claim against Dr. Benoit based upon the failure to provide the metallic partial is plausibly alleged.

**Commissioner Cook**

Leniart's alleges that he wrote to Commissioner Cook about how he was in pain due to lack of dental care and that inmates were not being provided timely dental care due to inadequate staffing at Cheshire. He alleges further that Cook never responded to him, and that Commissioner Cook failed to remedy the inadequate staffing problem at Cheshire.

For purposes of this initial review, the Court concludes that Leniart has sufficiently alleged that he made Commissioner Cook aware that he was suffering from inadequate dental care due to the shortage of at the Cheshire dental unit and that Commissioner Cook failed to take remedial action. *See Brown v. Benoit*, No. 3:17-CV-53 (SRU), 2017 WL 354187, at *4 (D. Conn. Jan. 24, 2017) (permitting claim based on failure to ensure adequate staffing at Cheshire to proceed beyond initial review); *Michalski v. Erfe*, No. 3:17-CV-2074 (VAB), 2019 WL 5965204, at *14 (D. Conn. Nov. 13, 2019) (permitting inadequate staffing claim to proceed against Warden and the Commissioner); *see also Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). *Grullon v. City of New Haven*, 720 F.3d 139, 141 (2d Cir. 2013) (reversing dismissal of Grullon's claim against warden although he had alleged that he sent a letter to the warden complaining of prison conditions.). Accordingly, the Court will permit the Eighth Amendment claim to proceed against Commissioner Cook in his individual capacity based upon his alleged failure to take steps to remedy the alleged constitutional violation stemming from the inadequate dental staffing and Leniart's failure to receive timely dental care.

**Inadequate Staffing Claim Against Other Defendants**

It is unclear whether Leniart intends to assert an Eighth Amendment claim against the other defendants on the basis of inadequate staffing at Cheshire. To the extent that he does, Leniart has not alleged that defendants Borchet or Drs. Lichtenstein and Fisher had but failed to exercise the capacity to ensure adequate staffing levels at the Cheshire dental. *See Warwick*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5. With respect to Dr. Benoit, Leniart's allegations do not sufficiently allege that Dr. Benoit was aware that the level of dental staffing was resulting in an excessive delay and denial of Leniart's dental care. *See id.* at 7 (dismissing claims against

16

supervisory official because plaintiff had not alleged that defendant Benoit was aware that the staffing was resulting in the failure to provide Leniart with timely dental care). However, the Court will afford Leniart the opportunity to amend his complaint to assert an Eighth Amendment claim against Benoit based on failure to ensure adequate staffing.[5]

**Inadequate Health Services Review Process**

Leniart asserts a claim based on the failure "to maintain an adequate [Health Services Review] process for inmates to address their concerns at [Cheshire] medical and dental units with tacking numbers and receipts to show compliance with exhaustion." ECF No. 1 at ¶ 60. This claim is not plausible and must be dismissed.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). As this Court has previously held, an inmate has no constitutional right to effective institutional grievance procedures. *Brown v. Benoit*, No. 3:17-CV-53 (SRU), 2017 WL 354187, at *4 (D. Conn. Jan. 24, 2017) (citing

---

[5] Leniart appears to allege a separate Eighth Amendment claim based on failure to provide for alternative procedures to transport inmates to an outside provider when overwhelmed with work or shut down due to COVID-19. To the extent he alleges inmates should be transported to other providers when dental unit is overwhelmed or backed up, the Court construes this claim as a part of the failure to provide adequate staffing. However, Leniart has not alleged sufficient factual allegations to support a plausible Eighth Amendment violation based on failure to provide dental treatment during a shut down due to COVID-19. As Leniart has not alleged Eighth Amendment violations based on a dental unit shut down, the Court will dismiss this claim without prejudice.

*Kalican v. Dzurenda*, 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) and *Overhold v.*
*Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (3d Cir. 2000)).

**Official Capacity Claims**

Leniart asserts his official capacity claims for injunctive and unspecified declaratory
relief against Commissioner Cook in his official capacity.[6]

Leniart may proceed against a DOC official in his or her official capacity to the extent he
alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563
U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Ex parte Young*, 209
U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh
Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official
acting in an official capacity for prospective injunctive relief for continuing violations of federal
law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).
"A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh
Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit*
*Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment
immunity "does not permit judgments against state officers declaring that they violated federal
law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Because Leniart has not specified his request for declaratory relief, the Court cannot
determine if it is plausible and will dismiss this request without prejudice.

With respect to his requests for injunctive relief, Leniart's complaint requests to be

---

[6] Any claims for money damages against the defendants, who are state employees, in their
official capacities are dismissed as barred by the Eleventh Amendment. *See, e.g. Kentucky v. Graham*,
473 U.S. 159, 169 (1985).

provided with an outside provider to assess the nature of his dental issues; to have a provider appointment to replace his plastic partial with an "alloy partial;" and to receive gum treatment to prevent further loss. ECF No. 1 at ¶ 61. In his motion for preliminary injunction, he requests the court to order the provision of the treatment by an independent provider until all necessary work has been completed and his pain remedied. ECF No. 4 at ¶ 2.

Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011).

Leniart's requests for an outside provider present remedies for his on-going Eighth Amendment deprivation of dental care. Leniart cannot, however, proceed against Cook who is no longer the DOC Commissioner and, therefore, does not have the capacity to provide any requested relief. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act).[7] He may proceed against Interim Commissioner Angel Quiros under Federal Rule of Civil Procedure 25(d) ("An action does not abate when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,] [and] [t]he officer's successor is automatically substituted as a party."). Accordingly, the Court will instruct the clerk to serve this complaint on Angel Quiros in his official capacity, and it will instruct Commissioner Quiros to respond to the motion for preliminary injunction.

**ORDERS**

(1) The case shall proceed on Leniart's Eighth Amendment claims as discussed above

---

[7] *See* https://portal.ct.gov/DOC (showing that Angel Quiros is the current Interim Commissioner).

against Yvonne Borchet, Dr. Lichtenstein, Dr. Fisher, Dr. Benoit, and Commissioner Cook in their individual capacities, and against Interim Commissioner Angel Quiros in his official capacity.

All other claims are DISMISSED without prejudice to filing an amended complaint, within 30 days of this Order, to correct the deficiencies identified in this Initial Review Order.

(2) The clerk shall verify the current work address of Yvonne Borchet, Dr. Lichtenstein, Dr. Fisher, Dr. Benoit, and Commissioner Cook with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses on or before **October 19, 2020**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Interim Commissioner Angel Quiros in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before October 19, 2020 and to file a return of service within thirty (30) days from the date of this order. **Defendants were previously instructed to file a response to the motion for preliminary injunction but have not done so. As it is unclear whether the court's instruction was received insofar as the defendants had not yet been served in this action, the defendants are ordered to file a response to the motion for preliminary injunction on or before October 28,**

**2020. In that vein, Leniart's motion for contempt [13] IS DENIED.**

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **March 28, 2021**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by April 28, 2021.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the

plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 28th day of September 2020 at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge